1

2

3

4

5

6

7

8                               UNITED STATES DISTRICT COURT

9                          FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    MARK DANIEL BLAKESLEY,                      No.  2:20-cv-0567 TLN AC P

12                        Petitioner,

13          v.                                    ORDER and

14    RAYTHEL FISHER, Warden,                     FINDINGS AND RECOMMENDATIONS

15                        Respondent.

16

17          I.      **Introduction**

18                Petitioner Mark Daniel Blakesley is a state prisoner incarcerated at Valley State Prison,

19    under the authority of the California Department of Corrections and Rehabilitation (CDCR).

20    Petitioner proceeds pro se and in forma pauperis with a habeas corpus action filed pursuant to 28

21    U.S.C. § 2254.  See ECF No. 1.  Petitioner challenges his 1983 convictions for murder,

22    kidnapping and robbery.  Petitioner filed two prior federal petitions but voluntarily dismissed

23    both cases prior to any decision on the merits.[1]  Petitioner presents one claim in the instant

24    petition: that the state failed to disclose post-conviction exculpatory evidence.  Petitioner seeks an

25    order of this court directing the trial court to produce relevant "letters," "determine the effect of

26    false evidence at trial" and "reverse [his] conviction."  Id. at 15; see also ECF No. 19 (discovery

27    _____

28    [1]  See Blakesley v. Yates, Case No. 2:08-cv-01595 JFM P; and Blakesley v. Director of
      Corrections, Case No. 2:19-cv-00966 TLN EFB P.

                                                    1

motion).  Petitioner avers that he has pursued this claim through the state courts.  Id. at 28-31.

Respondent moves to dismiss this action on the ground it was commenced after expiration of the one-year statute of limitations established by the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2244(d).  ECF Nos. 15-6.  Petitioner opposes the motion on the ground he is actually innocent of the "underlying offense."  ECF No. 18; see also ECF No. 1 at 14, 21.  Respondent's reply addresses petitioner's actual innocence claim.  ECF Nos. 23-4.  In response, petitioner filed an "Opposition Number Two," ECF No. 25, and a "Traverse," ECF No. 26.  Because petitioner's actual innocence claim was addressed by respondent for the first time in the reply, the court construes petitioner's second opposition as an authorized surreply.  However, petitioner's subsequent "traverse" is unauthorized and will therefore by disregarded.[2]

This case is referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302(c).  For the following reasons, the undersigned recommends that respondent's motion to dismiss be granted, and this case be dismissed with prejudice.

## II.   **Timeliness of the Petition**

### A.   **Statute of Limitations**

AEDPA's one-year statute of limitations provides in pertinent part:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review
> . . . .

28 U.S.C. § 2244(d)(1)(A).

The limitations period is statutorily tolled during the time in which "a properly filed application for State post-conviction or other collateral review with respect to the pertinent

---

[2]  Neither the Federal Rules nor the Local Rules authorize the filing of a surreply as a matter of right.  See E.D. Cal. R. 230(b)-(d) (providing for a motion, opposition, and reply).  Nevertheless, this court may authorize a surreply when there is a valid reason for additional briefing, e.g. to address new arguments.  This exception supports consideration of petitioner's second-filed opposition brief but not his subsequent "traverse."

judgment or claim is pending . . . ."  28 U.S.C. § 2244(d)(2).  A state petition is "properly filed," and thus qualifies for statutory tolling, if "its delivery and acceptance are in compliance with the applicable laws and rules governing filings."  Artuz v. Bennett, 531 U.S. 4, 8 (2000).  "The period between a California lower court's denial of review and the filing of an original petition in a higher court is tolled – because it is part of a single round of habeas relief – so long as the filing is timely under California law."  Banjo v. Ayers, 614 F.3d 964, 968 (9th Cir. 2010); see also Carey v. Saffold, 536 U.S. 214, 216-17 (2002) (within California's state collateral review system, a properly filed petition is considered "pending" under Section 2244(d)(2) during its pendency in the reviewing court as well as during the interval between a lower state court's decision and the filing of a petition in a higher court, provided the latter is filed within a "reasonable time").

The limitations period may be equitably tolled if a petitioner establishes shows "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing."  Holland v. Florida, 560 U.S. 631, 649 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)).  "The high threshold of extraordinary circumstances is necessary lest the exceptions swallow the rule."  Lakey v. Hickman, 633 F.3d 782 (9th Cir. 2011) (citations and internal quotation marks omitted).  Actual innocence can support equitable tolling.  McQuiggin v. Perkins, 569 U.S. 383, 386-87 (2013).  To qualify, a petitioner must present new and reliable evidence of factual innocence, in light of which no reasonable jury would have convicted him.  Id.; see also Schlup v. Delo, 513 U.S. 298 (1995).

**B.**     **Procedural Background**

The following dates and record facts are pertinent to the court's analysis under the statute of limitations.

• On June 29, 1983, in the Sacramento County Superior Court, petitioner Mark Blakesley and codefendant Terry Crawford were convicted by a jury of the 1982 murder, robbery and kidnapping of Michael Rayfield.  Petitioner was sentenced on August 18, 1983 to an indeterminate state prison term of twenty-five years to life.  See Lodged Document (Lodged Doc.) 1; see also Lodged Doc. 4.

////

3

1        • The California Court of Appeal, Third Appellate District, affirmed the judgments by

2 order filed June 17, 1985, as modified July 1, 1985.  Lodged Docs. 2, 3.

3            • Petitioner filed a petition for review in the California Supreme Court in July 1985,

4 which was denied on October 17, 1985.  Lodged Docs. 4, 5.[3]

5            • Petitioner filed nine state post-conviction collateral actions.[4]

6            • <u>First Three State Habeas Petitions & Evidentiary Hearing (1984-86)</u>[5]

7                • First petition for writ of habeas corpus filed in, and denied by, the Sacramento

8 County Superior Court in 1984.  Lodged Doc. 5; <u>see</u> n.5, supra.

9                • Second petition for writ of habeas corpus filed in, an denied by, the California

10 Court of Appeal in 1985.  <u>Id.</u>

11                • Third petition for writ of habeas corpus filed in the California Supreme Court on

12 July 6, 1984; Order to Show Cause returnable to the California Court of Appeal issued on

13 September 20, 1984.  <u>Id.</u>

---

[3]  Unable to locate the original documents related to petitioner's petition for review, respondent relies on March 28, 1986 appellate opinion which states that, following the Court of Appeal's affirmance of the challenged judgments, "hg. den. by Cal. Sup. Ct. October 17, 1985."  ECF No. 15 at 1 (citing Lodged Doc. 5 at 2).  Neither the petition for review nor a decision on the petition are reflected in the California Supreme Court's current Case Information website.  <u>See</u> http://appellatecases.courtinfo.ca.gov/search  (This court may take judicial notice of its own records and the records of other courts.  <u>See</u> <u>United States v. Howard</u>, 381 F.3d 873, 876 n.1 (9th Cir. 2004); <u>United States v. Wilson</u>, 631 F.2d 118, 119 (9th Cir. 1980); <u>see also</u> Fed. R. Evid. 201.)  Nevertheless, further verification is not required to address the merits of respondent's motion to dismiss or plaintiff's actual innocence claim.

[4]  When available, petitioner's filing dates referenced herein reflect the prison mailbox rule, which deems a document served or filed on the date it was signed by the prisoner and given to prison officials for mailing.  <u>See</u> <u>Houston v. Lack</u>, 487 U.S. 266 (1988) (establishing prison mailbox rule); <u>Campbell v. Henry</u>, 614 F.3d 1056, 1059 (9th Cir. 2010) (applying the mailbox rule to both state and federal filings by incarcerated inmates).

[5]  Respondent's counsel states that she was "unable to obtain a copy of the petitions and rulings pertaining to the first, second, and third state habeas petitions due to the age of the cases.  The listed filing dates of the first, second and third state habeas petitions were obtained from the March 28, 1985 California Court of Appeal opinion in case number 13294.  [Lodged Doc. 5]  However, it appears that the opinion misstated either the disposition date of the first state petition or the disposition date of the second state petition.  (Lod. Doc. 5 at 2.)  Thus, Respondent is unable to provide the precise date the first and second state petitions were filed and denied."  ECF No. 15 at 2 n.3.  Notwithstanding these difficulties, the filing and disposition dates of petitioner's first and second state petitions are not needed to address the matters currently pending before this court.

1            • California Court of Appeal's referral to the Sacramento County Superior Court

2 to act as referee and take testimony issued on November 27, 1985.  Id.

3             • Sacramento County Superior Court's findings and opinion issued on February

4 28, 1986.  Id.

5             • California Court of Appeal's denial and discharge of order to show cause issued

6 on March 28, 1986.  Lodged Doc. 5.

7       • Six Subsequent State Habeas Petitions (2010-20)

8             • Fourth petition for writ of habeas corpus was filed in the Sacramento County

9 Superior Court on January 29, 2010, and denied on February 16, 2010.  Lodged Doc. 6.[6]

10             • Fifth petition for writ of habeas corpus was filed in the California Supreme

11 Court on November 25, 2018, Lodged Doc. 7, and denied on April 24, 2019, Lodged Doc. 8.

12             • Sixth petition for writ of habeas corpus was filed in the Sacramento County

13 Superior Court on May 8, 2019, Lodged Doc. 9, and denied on July 29, 2019, Lodged Doc. 10.

14             • Seventh petition for writ of habeas corpus was filed in the Sacramento County

15 Superior Court on October 15, 2019, Lodged Doc. 11, and denied on October 28, 2019, Lodged

16 Doc. 12.

17             • Eighth petition for writ of habeas corpus was filed in the California Supreme

18 Court on November 7, 2019, Lodged Doc. 13, and denied on February 11, 2020, Lodged Doc. 14.

19             • Ninth petition for writ of habeas corpus was filed in the Sacramento County

20 Superior Court on May 8, 2020, Lodged Doc. 15, and remains pending as of this writing.[7]

21             • Petitioner filed the instant federal petition on March 12, 2020.  ECF No. 1.

22 ////

23

24 [6]  Respondent's counsel states that she was "unable to obtain a copy of the fourth and ninth state

25 petitions from the superior court because of court closures due to COVID-19.  However, the listed filing dates were obtained from the superior court's dockets."  ECF No. 15 at 3 n.4.  The

26 undersigned finds this showing adequate to assess the merits of respondent's motion to dismiss. See n.2, supra.

27 [7]  This court takes judicial notice of the relevant case dockets available on the Case Information website operated by the Sacramento County Superior Court.  See n.3, supra; see also

28 https://services.saccourt.ca.gov/PublicCaseAccess/Criminal/CaseDetails

1

          **C.**     **<u>Analysis</u>**

2

       Following the California Supreme Court's denial of direct review on October 17, 1985,

3

petitioner had ninety days, or until January 15, 1986, to file a petition for writ of certiorari in the

4

United States Supreme Court.  <u>See</u> Rule 13, Supreme Court Rules; <u>Bowen v. Roe</u>, 188 F.3d 1157,

5

1158-59 (9th Cir. 1999) ("[T]he period of 'direct review' in 28 U.S.C. § 2244(d)(1)(A) includes

6

the period within which a petitioner can file a petition for a writ of certiorari from the United

7

States Supreme Court, whether or not the petitioner actually files such a petition.").  Because

8

petitioner did not file a petition for writ of certiorari, his conviction became final on January 15,

9

1986.

10

       Nearly ten years later, on April 24, 1996, AEDPA "became law . . . and imposed for the

11

first time a statute of limitations on habeas petitions filed by state prisoners."  <u>Miles v. Prunty</u>,

12

187 F.3d 1104, 1105 (9th Cir. 1999).  Therefore, absent statutory or equitable tolling, petitioner

13

herein had a period of one year from April 25, 1996 to commence a federal habeas action.  <u>See</u>

14

<u>Patterson v. Stewart</u>, 251 F.3d 1243, 1246 (9th Cir. 2001) (commencement of limitations period

15

excludes last day of period for seeking direct review, by application of Fed. R. Civ. P. 6(a)).  This

16

one-year period expired on April 24, 1997.

17

       Petitioner did not file any state post-conviction collateral actions during this one-year

18

period.  His first, second and third state habeas petitions were decided prior to AEDPA's effective

19

date.  Petitions denied before commencement of the limitations period have "no effect on the

20

timeliness of the ultimate federal filing."  <u>Waldrip v. Hall</u>, 548 F.3d 729, 735 (9th Cir. 2008).

21

His remaining state petitions were filed after the limitations period expired.  "[S]ection 2244(d)

22

does not permit the reinitiation of the limitations period that has ended before the state petition

23

was filed."  <u>Ferguson v. Palmateer</u>, 321 F.3d 820, 823 (9th Cir. 2003).

24

       Therefore, none of petitioner's state petitions entitled him to statutory tolling.  Petitioner

25

asserts that he is entitled to equitable tolling based on recently discovered material exculpatory

26

evidence that demonstrates his actual innocence.  Unless petitioner can make a sufficient showing

27

of actual innocence, this action must be dismissed as untimely because filed more than twenty

28

////

1    years after expiration of AEDPA's one-year statute of limitations.  The court next addresses

2    petitioner's actual innocence theory.

3          **III.      Actual Innocence**

4          In opposition to respondent's motion to dismiss, petitioner expands upon his single habeas

5    claim that evidence disclosed to him for the first time in 2018 demonstrates that he is actually

6    innocent of the crimes for which he was convicted.  Petitioner asserts that his actual innocence

7    supports an equitable exception to AEDPA's limitations period and requires consideration on the

8    merits.

9                 **A.      Legal Standards**

10         "[W]here an otherwise time-barred habeas petitioner demonstrates that it is more likely

11   than not that no reasonable juror would have found him guilty beyond a reasonable doubt, the

12   petitioner may pass through the Schlup gateway and have his constitutional claims heard on the

13   merits." Lee v. Lampert, 653 F.3d 929, 937 (9th Cir. 2011) (en banc) (citing Schlup v. Delo, 513

14   U.S. 298 (1995)); accord, McQuiggin v. Perkins, 569 U.S. 383, 386-87 (2013).  In order to obtain

15   relief from the statute of limitations, a petitioner claiming actual innocence must establish a

16   miscarriage of justice under the Schlup standard by demonstrating "that it is more likely than not

17   that no reasonable juror would have convicted him in the light of the new evidence." Lee, 653 at

18   938.  Actual innocence in the miscarriage of justice context "means factual innocence, not mere

19   legal insufficiency."  Bousley v. United States, 523 U.S. 614, 623-24 (1998); Sawyer v. Whitley,

20   505 U.S. 333, 339 (1992) (citing Smith v. Murray, 477 U.S. 527 (1986)); Jaramillo v. Stewart,

21   340 F.3d 877, 882-83 (9th Cir. 2003) (accord).

22         To make a credible claim of actual innocence, the petitioner must produce "new reliable

23   evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or

24   critical physical evidence – that was not presented at trial." Schlup, 513 U.S. at 324.  The habeas

25   court then considers all the evidence: old and new, incriminating and exculpatory, admissible at

26   trial or not.  House v. Bell, 547 U.S. 518, 538 (2006).  On this complete record, the court makes a

27   "'probabilistic determination about what reasonable, properly instructed jurors would do.'" Id.

28   (quoting Schlup, 513 U.S. at 330).

                                              7

1

### B.    Factual Background

2       The June 17, 1985 opinion of the California Court of Appeal set forth the following

3   statement of facts:

4           On September 24, 1982, a fisherman found the body of Michael
        Stephen Rayfield floating in the Sacramento River near a sand bar.
5       The body was water engorged, deeply lacerated and had been "hog-
        tied" in a stranglehold.  An autopsy revealed rope strangulation was
6       the cause of death, and that blunt trauma to the head with fractures
        of the skull and intracranial bleeding were contributing factors.  In
7       the course of investigation, the Sacramento County Sheriff's
        Department contacted Brocklin Tawyea, then 18 years old.  Tawyea
8       was granted immunity and testified for the prosecution. The
        following facts are based on the testimony of Tawyea and the two
9       defendants.

10          Tawyea testified that he, defendants Blakesley and Crawford, and the
        victim Rayfield all resided at the Rainbow Inn in Sacramento in
11      September 1982.  On the morning of September 23, 1982, Blakesley,
        Crawford and Tawyea planned to take Rayfield out and "beat his ass"
12      for being "sassy" with Tawyea's sister.  Rayfield was also suspected
        of sexually molesting Tawyea's two younger sisters.  Tawyea and
13      the two defendants took Rayfield with them in Crawford's
        girlfriend's car under the pretense of going to purchase some lumber.
14      They first proceeded to a grocery store to purchase beer.  They then
        proceeded to a slough south of Sacramento on Elliot Ranch Road to
15      drink the beer.  At that location, after finishing the beer, Blakesley
        grabbed Rayfield by the hair and threw him to the ground.  Blakesley,
16      wearing black motorcycle boots, kicked Rayfield.  Tawyea testified
        Crawford stood by watching the assault.  Blakesley told Crawford to
17      get a rope from the car and Crawford did so.

18          According to Tawyea's testimony, Blakesley "hog-tied" Rayfield in
        such a way that he would slowly strangle as his arm and leg muscles
19      relaxed from fatigue.  Blakesley emptied Rayfield's pockets and the
        three divided up his money, which amounted to less than $140.
20      Blakesley and Crawford placed Rayfield into the trunk of the car.
        Tawyea and the two defendants got back into the car and Crawford
21      continued driving along the Sacramento River for several hours
        while Rayfield moaned and kicked at the truck [sic] hard enough to
22      put dents in it.  They stopped at various times to get more gas and
        beer, and for Blakesley to hit Rayfield. Finally, Blakesley told
23      Tawyea to get out of the car because he didn't want Tawyea involved
        "if they got caught."  After 20 minutes later, Crawford and Blakesley
24      picked up Tawyea. Blakesley said he had taken Rayfield out of the
        trunk, dragged him down to the river and cracked his head with a
25      crowbar from Crawford's trunk.  Blakesley told Tawyea to tell
        anyone who might ask at the hotel they had dropped Rayfield off at
26      the bus depot.

27          Crawford testified that when he, Blakesley and Tawyea agreed to
        "beat [Rayfield's] ass," he thought that meant they were going to
28      scare Rayfield away from the motel.  Crawford testified that at the

8

1
2
3
4
5

slough, Blakesley threw Rayfield to the ground, kicking and punching him.  Crawford helped Blakesley carry Rayfield to the trunk by holding Rayfield's head.  He acknowledged he did the driving from one town to another and down the Sacramento River with Rayfield in the trunk. Crawford testified Rayfield was still alive when Blakesley alone pulled Rayfield out of the trunk by the rope and dropped him down the levee.  Crawford stated after 10 to 15 minutes, Blakesley returned, grabbed a crowbar out of the trunk of the car, and returned from the side of the levee where he had left Rayfield.

6
7
8

Crawford put on character witnesses testifying that he was a peaceful, nonviolent person.  It was stipulated Crawford had a long history of heart problems, including two open heart surgeries, which did not allow him to engage in competitive sports.

9
10
11
12
13

Blakesley testified on his own behalf, his story differing from that of Crawford and Tawyea.  He stated at the slough Rayfield had pulled a knife and he was forced to knock Rayfield down.  Blakesley testified that Crawford and Tawyea jumped on Rayfield and started beating him up.  He stated Crawford accused Rayfield of having sex with "his wife."  Blakesley also testified that Crawford and Tawyea hog-tied Rayfield and put him in the trunk.  Blakesley also testified that Crawford and Tawyea got out of the car and threw Rayfield over the side of a levee.

14  Lodged Doc. 2.

15      On June 29, 1983, in the Sacramento County Superior Court with the Honorable Sheldon

16  H. Grossfeld presiding, petitioner and codefendant Crawford were convicted by a jury of

17  murdering, robbing and kidnapping Michael Rayfield.  Lodged Docs. 1, 4.  The judgments were

18  affirmed by the California Court of Appeal by order filed June 17, 1985, as modified July 1,

19  1985, and the California Supreme Court denied review on October 17, 1985.  Lodged Docs. 2-5.

20      Meanwhile, petitioner pursued a full round of habeas petitions in the California courts in

21  which he alleged that Crawford had recanted his trial testimony and thus had testified falsely at

22  trial.  These petitions included as an exhibit "a copy of an undated, unsworn, unauthenticated

23  letter purportedly from Crawford to Blakesley's mother (the Crawford letter) ["Letter One"

24  herein] . . . [which] states, in part, that 'Blakesley had nothing whatsoever to do with the death of

25  [] Rayfield.'"  Lodged Doc. 5 (ECF No. 16-5 at 2); see also ECF No. 1 at 26-7 (a copy of Letter

26  One is attached to petitioner's federal petition).  The petitions were denied by the Superior Court

27  and the Court of Appeal.  On July 6, 1984, petitioner filed his petition in the California Supreme

28  Court which, on September 20, 1984, directed the Director of Corrections to show cause why

Crawford's trial testimony did not constitute "false evidence" within the meaning of California

Penal Code section 1473, subdivision (b)(1), returnable to the Court of Appeal.  Id. (ECF No. 16-

5 at 3).

       The Director of Corrections filed a return, and petitioner filed a traverse.  Oral argument

was held on November 18, 1985 and identified the "sole factual issue raised by the order to show

cause was whether Crawford gave false testimony at trial."  Id. (ECF No. 16-5 at 3).  On

November 27, 1985, the Court of Appeal referred the matter to Sacramento County Superior

Court Judge Allen P. Fields, "to act as referee to hear and take testimony of witnesses, if need be,

and to receive such other evidence as deemed necessary to resolve the question set forth by the

order to show cause."  Id. (ECF No. 16-5 at 3).  Judge Fields was directed to file a verbatim

report of the proceedings and evidence with his findings of fact.

       Superior Court Judge Fields filed his findings and opinion in the Court of Appeal on

February 28, 1986.  As recounted and adopted by the Court of Appeal, Judge Fields made the

following findings:

> On November 27, 1985, the Court of Appeal of the State of
> California, Third Appellate District, appointed the Honorable Allen
> P. Fields, Judge of the Sacramento County Superior Court, as referee
> to hear and take testimony of witnesses, if need be, and to receive
> such other evidence as deemed necessary to resolve the follow
> question:
>
>> Did Teddy L. Crawford give false testimony at the Superior
>> Court trial of defendants Blakesley and Crawford?
>
> The matter was regularly set for hearing on February 13, 1986.
> Charlotte Keeley appeared on behalf of petitioner and Doug Benham,
> Deputy District Attorney, appeared for the real party in interest.
> Steve Bedient, Attorney at Law, having been appointed by the
> referee to represent Teddy Lee Crawford, appeared on behalf of
> Teddy Lee Crawford.
>
> Evidence having been presented by petitioner, said evidence
> consisting of the personal testimony of Teddy Lee Crawford and
> Mark Daniel Blakesley, and the transcript of the trial of said
> defendants, the matter was submitted to the referee.
>
>  The referee hereby finds:
>
> 1.   That petitioner, Mark Daniel Blakesley and his codefendant
> Teddy Lee Crawford were both confined to Folsom State Prison
> following their conviction and sentence on the underlying charge of

murder in the first degree.

2.  That while so confined, petitioner Blakesley threatened Crawford with a "snitch jacket" unless Crawford wrote a letter recanting his trial testimony and exonerating petitioner Blakesley.

3.  That petitioner Blakesley wrote a letter (Exhibit 3 – presented at this hearing) and gave it to Crawford to copy.

4.  As a result of the threats of Blakesley, petitioner herein, Crawford wrote the two letters (Exhibits 1 and 2, presented at this hearing).[8]

5.  That the said two letters purporting to exonerate Blakesley were copied by Crawford under threats and are in fact untrue statements.

6.  That the testimony of Teddy Lee Crawford given at this hearing is totally consistent with his testimony at the trial and is consistent with all other witnesses at the trial.

7.  That the testimony of Teddy Lee Crawford given in this proceeding and at his trial is true in all respects.

8.  That the testimony of petitioner Mark Daniel Blakesley given in this proceeding and at his trial is in fact totally false.

The conclusion of the referee is that Teddy Lee Crawford did not give false testimony at the Superior Court trial of defendants Blakesley and Crawford.

Lodged Doc. 5 (ECF No. 16-5 at 4-5).

The Court of Appeal found that the record fully supported Judge Fields' findings which were adopted by the appellate court.  By order filed March 28, 1986, the Court of Appeal held that Crawford's trial testimony was not "false evidence" within the meaning of California Penal Code section 1473, subdivision (b)(1).  The Court of Appeal discharged the order to show cause and denied the petition for writ of habeas corpus.  Lodged Doc. 5 (ECF No. 16-5 at 5-6).

### C.      Petitioner's Contentions and Supporting Evidence

Petitioner contends that he is actually innocent of the underlying offense and that his conviction should be reversed.  ECF No. 1 at 14, 15; see also ECF No. 25 at 1 ("Petitioner seeks

---

[8]  Exhibits 1, 2 and 3 presented at the 1986 evidentiary hearing do not appear to be included as such in the present record.  As discussed below, Exhibits 1 and 2 are the near-identical letters handwritten by Crawford and sent, respectively, to petitioner's mother ("Letter One" herein) and the trial judge, Superior Court Judge Grossfeld ("Letter Two" herein).  Exhibit 3 bears similar content to Letters One and Two but was handwritten by petitioner.

1  habeas relief from a 1983 conviction for murder, kidnap, and robbery.").  The "new" evidence

2  upon which petitioner relies are four putative recantation letters allegedly written by his

3  codefendant, Terry Crawford, shortly after the two were sentenced.  Petitioner apparently retains

4  a copy of "Letter One," which was addressed and sent to petitioner's mother, Mrs. Blakesley.

5  Petitioner seeks the remaining three letters through discovery.  In Letter One, Crawford stated

6  that Blakesley had nothing to do with the death of Rayfield because the only perpetrators were

7  Crawford and Tawyea.  Letter Two, substantively similar to Letter One, was addressed "To

8  Whom It May Concern" and sent to the Honorable Sheldon Grossfeld, the trial judge.  Letter Two

9  was the subject of a Sacramento Bee (Sac Bee) newspaper article on October 6, 1983.  ECF No. 1

10  at 25-6.  Petitioner states that he first became aware of Letter Two and the Sac Bee article in

11  2008, when a prison official told him about the Sac Bee article and stated that it was in the

12  confidential portion of petitioner's prison central file.  Petitioner avers that it was not until 2018

13  that he obtained a copy of the Sac Bee article through the attorney who represented petitioner at

14  his 2016 parole hearing.[9]  ECF No. 1 at 18.  Petitioner states that he does not have a copy of

15  Letter Two and seeks it through discovery.[10]

16       Petitioner's "new" evidence also includes putative Crawford-penned Letters Three and

17  Four, which petitioner also seeks through discovery.  It is not clear that Letter Three exists; nor is

18  its content clearly alleged.  Petitioner alleges that at the 1986 evidentiary hearing Judge Fields

19  "identifies a third letter written by Crawford which is materially exculpatory in nature."  ECF No.

20  18 at 3.  Petitioner concedes that his attorney at the evidentiary hearing, Ms. Keeley, "never told

21  this petitioner of that letter," but avers that she "actually identifies the letter as described, during

22  the outset" of the hearing.  ECF No. 18 at 4.  Petitioner seeks copies of both Letter Three and the

23

24  _____

25  [9]  Petitioner explains that the Sac Bee article was included in legal materials released in 2016 by
    the BPH Commissioner to petitioner's legal counsel, Michael Evan Beckman, from whom

26  petitioner obtained the materials in 2018 by filing a State Bar complaint.  ECF No. 1 at 18.
    [10]  In his motion for discovery filed in tandem with his opposition to respondent's motion,

27  petitioner seeks production of "[a] letter written reportedly by Teddy Lee Crawford [CDCR #],
    and sent to the Hon. Sheldon Grossfeld, Judge of the Superior Court of California, in and for the

28  County of Sacramento."  ECF No. 19 at 1.

evidentiary hearing transcript.[11]  The undersigned finds that the introductory comments made by Ms. Keeley at the evidentiary hearing cannot reasonably be construed to identify a third letter written by Crawford, see ECF No. 7 at 45-6, and that petitioner has identified no other evidence to support such a finding.[12]  Moreover, a copy of the evidentiary hearing transcript is included in the present record and available to petitioner.  Id. at 41-97.

Finally, petitioner seeks to obtain and rely on a fourth putative Crawford letter (Letter Four), a "suicide letter" allegedly found in Crawford's cell upon his death.[13]  Petitioner states that he "knows" a copy of this letter is contained in the confidential portion of his central file and that it will provide additional evidence of petitioner's innocence.  ECF No. 19 at 4-5.  However, like Letter Three, neither the existence nor contents of Letter Four are evident.  Although petitioner previously stated that Crawford had committed suicide,[14] and previously sought to obtain a copy of Crawford's putative suicide letter,[15] in his 2008 federal petition before this court petitioner referred only to Crawford's putative "deathbed confession" in 1989, without reference to a writing.[16]  These inconsistencies indicate that the existence of Letter Four is merely speculative.

To summarize, neither Letter Three nor Letter Four have been shown to exist, and petitioner appears to concede that he timely received and retains a copy of Letter One.  Therefore,

---

[11]  Petitioner's discovery motion describes putative Letter Three as follows:  "A letter written by Teddy Lee Crawford [#] which was later identified as a material exculpatory letter in evidence, held by the Hon. Allen P. Fields, Judge of the Superior Court of California in Sacramento, on 13 February 1986."  ECF No. 19 at 2.

[12]  Although a third letter reflecting the substance of Letters One and Two was admitted into evidence at the hearing, it was penned in petitioner's handwriting and designated Exhibit 3.  See Lodged Doc. 7 at 46, and discussion infra.  This does not appear to be the putative "third exculpatory letter" that petitioner addresses before this court.

[13]  Putative Letter Four is described as follows in petitioner's discovery motion:  "The suicide letter of Teddy Lee Crawford [#], written on 26 June 1990 and found in the cell of Teddy Lee Crawford, deceased."  ECF No. 19 at 4.

[14]  See Lodged Doc. 18 at 14 (ECF No. 24-3 at 14) (2016 BPH Risk Assessment noted petitioner's statement that Crawford committed suicide on June 20, 1990, without reference to a letter).

[15]  See Lodged Doc. 7 at 107 (ECF No. 16-7 at 107) (2015 FOIA request directed to the California Department of Justice).

[16]  Petitioner averred that Crawford "fell ill from a heart condition, in 1989, at San Quentin State Prison . . . [and] [d]uring his illness . . . made a deathbed confession to the murder of Michael Stephen Rayfield."  Lodged Doc. 17 at 3 (as originally set forth in Blakesley v. Yates, Case No.2:08-cv-01595 JFM P, ECF No. 1 at 3).

1   only Letter Two (and tangentially, the Sac Bee article describing both Letters One and Two) are

2   pertinent to this court's assessment of petitioner's claim.

3       Petitioner contends that the "withholding" of Letter Two by Judge Grossfeld and the

4   "hiding" of the Sac Bee article by the Department of Corrections (now CDCR), constituted a

5   denial of due process under Brady v. Maryland, 373 U.S. 83 (1963), and hence a miscarriage of

6   justice under Schlup and McQuiggins requiring this court to consider his untimely petition and

7   hear his claim of actual innocence on the merits.

8                   **D.     <u>Analysis</u>**

9       Petitioner's challenge to his 1983 convictions must be considered in light of the factual

10  findings made by Judge Fields following the 1986 evidentiary hearing.  After hearing the

11  testimony of both petitioner and Crawford, Judge Fields found that Crawford's trial and

12  evidentiary hearing testimony were consistent and true, while petitioner's testimony was false.

13  The evidence at the hearing included copies of both Letter One and Letter Two, Lodged Doc. 7 at

14  45, which were described by petitioner's appointed counsel, Ms. Keeley, as "similar if not

15  identical," <u>id.</u> at 46.  Crawford testified that he wrote and sent both letters at petitioner's direction,

16  by copying a third letter penned and provided to him by petitioner (Exhibit 3).  <u>Id.</u> at 71-9.  Judge

17  Fields found credible Crawford's testimony that he wrote the letters to avoid petitioner giving

18  him a "rat jacket" for testifying against him at trial.  <u>Id.</u>  Judge Fields rejected petitioner's

19  testimony that, after his attorney gave him a printed copy of Letter One, petitioner "hand copied"

20  it "many, many times" for the purpose of attaching it as an exhibit to his state habeas petitions

21  because he did have access to a copy machine.  <u>Id.</u> at 86-91.  Petitioner testified that he stopped

22  this practice after he was "informed that the Superior Court was in command of one of the copies.

23  I was under the impression that [Judge] Sheldon Grossfeld had personally received a copy."  <u>Id.</u>

24  at 92.  Based on this evidence and testimony, Judge Fields found that Crawford's recantations in

25  Letters One and Two were false and written under duress.

26      Petitioner's sweeping challenges to the integrity of the evidentiary hearing are without

27  ////

28  ////

                                   14

1    substance.[17]  Review of the hearing transcript demonstrates that petitioner and Crawford were

2    represented by separate counsel, and that each witness was questioned at length by petitioner's

3    appointed counsel, the district attorney and the judge.  See Lodged Doc. 7 at 42 et seq.  Petitioner

4    offers no evidence nor makes any argument that casts doubt on the process, evidence or findings

5    of the evidentiary hearing.

6         Nor has petitioner presented any evidence upon which to infer that Judge Grossfeld

7    withheld Letter Two after he received it.  The Sac Bee article indicates that Judge Grossfeld

8    promptly shared the letter with petitioner's trial counsel, the prosecutor and Crawford's parents.

9    Petitioner's statements that he did not see the Sac Bee article and its reference to Letter Two until

10    2018 are inconsistent with the record.  As recounted by the Sacramento County Superior Court in

11    its July 29, 2019 denial of petitioner's sixth petition for writ of habeas corpus:

12
13          The [Sac Bee] article further stated, "Richard K. Corbin, the attorney who represented Blakesley in the case, said there may be a hearing on the contents of the Crawford letter [Letter Two]."  Clearly, defense counsel was aware of the evidence in 1983.  In addition, Petitioner wrote to the trial court in 1983 stating that his attorney had notified him of the Crawford letter [Letter Two] and "I have read the newspaper clippings" about the letter.  As Petitioner was clearly aware of the facts in late 1983, the current petition is untimely.

14
15
16

17    Lodged Doc. 10 (ECF No. 16-10 at 1-2); see also ECF No. 1 at 24-5 (Sac Bee article).  This

18    judicial assessment, and petitioner's 1986 testimony demonstrate that he was aware of Letter Two

19    and knew that its content was consistent with that of Letter One, even if petitioner did not obtain

20    an actual copy of Letter Two.

21         Petitioner cannot state a prima facie Brady claim[18] based on these facts, because petitioner

22
23    [17]  Petitioner alleges, for example, that during the evidentiary hearing he was "chained to a wall inside an anteroom adjacent to an elevator, for many hours. . . . [P]etitioner was waltzed into a courtroom for a few questions.  But there was no hearing, petitioner was never allowed to call witnesses, examine witnesses, make motions . . . or be assisted by counsel.  [¶]  Petitioner's attorney . . . never consulted with petitioner, never met with this petitioner before or after the 1986 'hearing' (which in truth was a sham) and in fact, has admitted to this petitioner – in writing – that she destroyed all records related to this petitioner in 1986."  ECF No. 25 at 5-6; see also ECF No. 18 at 3.

24
25
26

27    [18]  In Brady v. Maryland, 373 U.S. 83 (1963), the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due

28    process where the evidence is material either to guilt or to punishment, irrespective of the good

1  cannot show that the evidence at issue was favorable to him or suppressed by the state.  See

2  Banks v. Dretke, 540 U.S. 668, 691 (2004); Strickler v. Greene, 527 U.S. 263, 281-82 (1999).

3       Moreover, Letter Two does not present "new" or "reliable" evidence under Schlup.  A

4  California court has determined, after an evidentiary hearing, that the contents of Letter Two are

5  not only unreliable but patently false.  Therefore, this court finds that petitioner has not presented

6  any "new reliable evidence" that permits him to "pass through the Schlup gateway and have his

7  constitutional claims heard on the merits."  Lee, 653 F.3d at 937.

8       Finally, petitioner has presented no evidence of actual innocence.  Rather, petitioner

9  asserts that "[i]f everybody would have been truthful at trial," he would have been convicted as an

10 accomplice and could now seek a reduction in sentence under Senate Bill 1437.  ECF No. 1 at 22.

11 Petitioner states that "it strikes me as odd that Judge Grossfeld could have easily recalled this case

12 in 1984, and by agreement corrected the record to make me a secondary participant, and not the

13 primary killer."  Id.  The actual innocence exception is inapplicable under these circumstances

14 because it is meant to prevent a miscarriage of justice in the rare case where an entirely innocent

15 person may have been incarcerated.  See McQuiggin, 569 U.S. at 392; Schlup, 513 U.S. at 324-

16 25.

17       For these several reasons, this court finds no support for petitioner's actual innocence

18 claim and finds no miscarriage of justice in this case.  Accordingly, there is no basis for excusing

19 the untimeliness of the petition.

20    **IV.  Conclusion**

21       Accordingly, IT IS HEREBY ORDERED that:

22       1.  Petitioner's motion to compel discovery, ECF No. 19, is DENIED as unnecessary; and

23       2.  Petitioner's "traverse," ECF No. 26, is disregarded as an unauthorized surreply; the

24 Clerk of Court shall designate on the docket that this filing is stricken.

25 ////

26 ────────────────

27 faith or bad faith of the prosecution."  Id. at 87.  The duty to disclose such evidence applies even
   when there has been no request by the accused, United States v. Agurs, 427 U.S. 97, 107 (1976),
   and encompasses impeachment evidence as well as exculpatory evidence, United States v.

28 Bagley, 473 U.S. 667, 676 (1985).

1    In addition, for the foregoing reasons, IT IS HEREBY RECOMMENDED that:

2    1.  Respondent's motion to dismiss, ECF No. 15, be GRANTED; and

3    2.  This action be dismissed with prejudice.

4    These findings and recommendations are submitted to the United States District Judge

5    assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within thirty (30) days

6    after service of these findings and recommendations, any party may file written objections with

7    the court and serve a copy on all parties.  Such a document should be captioned "Objections to

8    Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be

9    filed and served within seven days after service of the objections.  The parties are advised that

10   failure to file objections within the specified time may waive the right to appeal the District

11   Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

12   If petitioner files objections, he may also address whether a certificate of appealability

13   should issue and, if so, why and as to which issues.  Pursuant to Rule 11 of the Federal Rules

14   Governing Section 2254 Cases, this court must issue or deny a certificate of appealability when it

15   enters a final order adverse to the applicant.  A certificate of appealability may issue only "if the

16   applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. §

17   2253(c)(2).

18   DATED: November 23, 2020

19

20                                    ALLISON CLAIRE
                                      UNITED STATES MAGISTRATE JUDGE
21

22

23

24

25

26

27

28

17